UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

RICKY L. GWILLIAMS,

           Plaintiff,                              Case No. 1:17-cv-266

v.                                                 Honorable Janet T. Neff

MICHIGAN PAROLE BOARD et al.,

           Defendants.
_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff Ricky L. Gwilliams is incarcerated with the Michigan Department of Corrections (MDOC) at the G. Robert Cotton Correctional Facility. He sues the Michigan Parole Board (MPB), MPB Chairman Michael Eagen, and MPB Member Anthony King.

Plaintiff was sentenced on November 6, 2009, to a prison term of 6 to 30 years. His earliest release date was June 13, 2015. In addition, Plaintiff was diagnosed in 2011 with ulcerative colitis, and he has been hospitalized numerous times for flare-ups.

On January 20, 2015, Plaintiff had a parole interview with Defendant King on January 20, 2015. At that interview, Defendant King did not ask about Plaintiff's physical condition or his ability to complete six months of Residential Substance Abuse Treatment (RSAT) programming. However, on August 8, 2015, Plaintiff was paroled to the RSAT program at the Detroit Reentry Center (DRC). After three months of the program, in November 2015, Plaintiff was sent to Duane Waters Hospital for emergency treatment, due to a flare-up of his ulcerative colitis. He remained in the hospital for twelve days.

On December 3, 2015, after he returned to the RSAT program, Plaintiff was reviewed by the MDOC Supervisor, the Institutional Parole Supervisor, and the Clinical Supervisor, who determined that he should be removed from the RSAT program for "absences due to medical health issues." (Compl., ECF No. 1, PageID.6.) On December 9, 2015, the supervisors sent a request to the MPB, requesting that the parole board change the special condition of his parole, due to his medical issues. The MPB acknowledged the request and changed Plaintiff's special conditions of parole from requiring completion of RSAT programming to requiring completion of Advanced

Substance Abuse Treatment (ASAT) programming. Plaintiff was put in the ASAT program on December 28, 2015.

Just as Plaintiff began his ASAT program, he was sent back to Duane Waters Hospital for emergency care. While he was convalescing in the hospital, he was removed from the ASAT program for medical reasons. On February 10, 2016, Plaintiff's parole was rescinded because his medical issues prevented him from executing the parole order, issues of which the parole board was not aware when it granted parole to the program. (Ex. 9 to Compl., ECF No. 1, PageID.18.)

On March 4, 2016, the parole board issued a 12-month continuance before Plaintiff's next review for parole. The MPB checked the box indicating, "The Parole Board lacks reasonable assurance that the prisoner will not become a menace to society or to the public safety and denial of parole is warranted . . . ." (Ex. 12 to Compl., ECF No. 1, PageID.22) Plaintiff complains that the six months he spent at the DRC was not credited toward his 12-month continuance. Plaintiff attempted to grieve the parole board's decision, but his grievance was rejected, because a prisoner may not grieve a parole board decision.

On August 8, 2016, Plaintiff was again reviewed for parole and given a 12-month continuance. Some of the reasons provided for the continuance were Plaintiff's prior criminal history and his institutional conduct. Plaintiff complains that he was not permitted to speak about the issues surrounding his first continuance. Plaintiff alleges that he has written the MPB and its individual members on numerous occasions seeking a rehearing or further explanation of the parole denial. Plaintiff complains,

> On a six year sentence, I will end up being incarcerated for eight and a half years, if, I have to do the time on these continuances.

(Compl., ECF No. 1, PageID.7.)

Plaintiff raises multiple claims. First, he alleges that Defendants MPB and King violated MICH. COMP. LAWS § 791.233(1)(A), by not considering all of the facts and circumstances (specifically, his physical condition and institutional programming) when they granted him parole and sent him to the RSAT program. Second, he argues that Defendant MBP violated the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12131, the Equal Protection Clause, and Article 7 of the Universal Declaration of Human Rights. Third, Plaintiff contends that Defendants violated MICH. COMP. LAWS § 791.235(6) and did not act in good faith, when it used his medical condition against him. Fourth, he argues that Defendants did not consider him a "menace to society" when they granted his parole, but when his medical condition required hospitalization, they provided only a vague reason for the continuance, in violation of MICH. COMP. LAWS § 791.233e(6) and the Eighth Amendment. Fifth, he contends that Defendant MPB violated the Double Jeopardy Clause of the Fifth Amendment, by not crediting him with the six months spent at the DRC.

For relief, Plaintiff demands that the six months spent at the DRC be credited toward his time. He also seeks a rehearing on his parole determination, based on the unjust rescission of his parole and unjust 12-month continuance. Further, he demands that his parole be reinstated and that, if further programming is required, he be placed into an after-care program in society. Finally, he seeks monetary damages, including the amount of one year's wages at $8.90 per hour (minimum wage).

## Discussion

I.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp.*

*v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 549 (6th Cir. 2009). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Due Process

Although Plaintiff does not expressly raise a due process claim, his allegations arguably implicate due process. First, in Claim 2 of his complaint, Plaintiff suggests that Defendants rescinded his parole to the ASAT program without due process, since they did not provide a hearing, as required under MICH. DEP'T OF CORR., Policy Directive 06.05.104, ¶ UU. Second, he appears to suggest that Defendants have subsequently denied him parole without considering all of the factors set forth under Michigan law and the MDOC policies. The Court construes these allegations as claims that he was deprived of procedural due process.

#### 1. parole rescission

To the extent petitioner seeks monetary relief for alleged violations of his constitutional rights, his claims are appropriate under § 1983. However, claims which challenge the revocation of parole are not cognizable under § 1983 until the parole revocation "has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994); *see also Schilling v. White*, 58 F.3d 1081, 1086 (6th Cir.1995). The principles espoused in *Heck* have been applied to § 1983 actions like Plaintiff's, challenging state parole revocation proceedings in the absence of a previous decision by a state or federal tribunal declaring the parole revocation invalid. *See Littles v. Board of Pardons & Paroles Div.*, 68 F.3d 122, 123 (5th Cir.1995) (per curiam); *Lovett v. Kinkela*, No. 98-3894, 1999 WL 644323, at *1 (6th Cir. Aug. 16, 1999); *Corsetti v. McGinnis*, No. 95-2061, 1996 WL 543684,

at *1 (6th Cir. Sept. 24, 1996).  Plaintiff has not demonstrated the invalidity of his parole revocation by either a state or federal habeas corpus decision.  Therefore, Plaintiff fails to present a cognizable federal claim.

2. parole denial and continuance

To establish a procedural due process violation, a plaintiff must prove that (1) he was deprived of a protected liberty or property interest, and (2) such deprivation occurred without the requisite due process of law.  *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby*, 470 F.3d 286, 296 (6th Cir. 2006); *see also Swihart v. Wilkinson,* 209 F. App'x 456, 458 (6th Cir. 2006). Plaintiff fails to raise a claim of constitutional magnitude because he has no liberty interest in being released on parole.  There is no constitutional or inherent right to be conditionally released before the expiration of a prison sentence.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979).  Although a state may establish a parole system, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Id.* at 7, 11; *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).

In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  The Sixth Circuit reiterated the continuing validity of *Sweeton* in *Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011).  In *Crump*, the court held that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole.  *See id.*; *see*

*also Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003). In addition, the Sixth Circuit has rejected the argument that the Due Process Clause is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge. *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010). Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system. *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).

Until Plaintiff has served his 30-year maximum sentence, he has no reasonable expectation of liberty. The discretionary parole system in Michigan holds out "no more than a mere hope that the benefit will be obtained." *Greenholtz*, 442 U.S. at 11. The Michigan Parole Board's failure or refusal to consider Plaintiff for parole, therefore, implicates no federal right. In the absence of a liberty interest, Plaintiff fails to state a claim for a violation of his procedural due process rights.

        B.      Double Jeopardy

Plaintiff's allegations concerning his double-jeopardy claim are extremely limited and difficult to understand. At points, he argues that Defendants failed to credit him with the time he spent in the DRC toward Plaintiff's 12-month continuance. Alternatively, he appears to suggest that he is not being credited on his sentence with the time he spent in the DRC.

The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This clause provides three separate guarantees: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments for the same offense. *See North United States v. Dixon*, 509

U.S. 688, 696 (1993); *Illinois v. Vitale*, 447 U.S. 410, 415 (1980); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).

Plaintiff arguably claims that he will be subjected to double punishment because his sentence has not been reduced to account for the six months he spent at DRC. Construed this way, his claim challenges the duration of his sentence. A challenge to the fact or duration of confinement should be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser v. Rodriguez*, 411 U.S. 475, 484, 493 (1973) (the essence of habeas corpus is an attack by a person in custody upon the legality of that custody and the traditional function of the writ is to secure release from illegal custody). Therefore, to the extent that Plaintiff's complaint challenges the fact or duration of his incarceration, it must be dismissed. *See Barnes v. Lewis*, No. 93-5698, 1993 WL 515483, at *1 (6th Cir. Dec. 10, 1993) (dismissal is appropriate where § 1983 action seeks equitable relief and challenges fact or duration of confinement); *Moore v. Pemberton*, 110 F.3d 22, 23-24 (7th Cir. 1997) (reasons for not construing a § 1983 action as one seeking habeas relief include (1) potential application of *Heck v. Humphrey*, 512 U.S. 477 (1994), (2) differing defendants, (3) differing standards of § 1915(a)(3) and § 2253(c), (4) differing fee requirements, (5) potential application of second or successive petition doctrine or three-strikes rules of § 1915(g)).

Moreover, to the extent that Plaintiff claims that the date of his next parole consideration did not consider the six-month period he was at the DRC, he fails to state a federal claim. As previously discussed, Plaintiff has no liberty interest in parole. *Crump*, 657 F.3d at 404; *Sweeton*, 27 F.3d at 1164-65. Obviously, therefore, he has no liberty interest in the timing of parole

decisions. In addition, the Court can discern no way in which the Double Jeopardy Clause is implicated by the facts as alleged.

### C. Eighth Amendment

Plaintiff sweepingly claims that Defendants violated the Eighth Amendment by denying his parole, causing him to remain in prison beyond his minimum sentence. As previously discussed, to the extent the Plaintiff challenges the duration of his confinement, his claim must be brought as a petition for habeas corpus and is not the proper subject of a civil rights action brought pursuant to § 1983. *See Preiser*, 411 U.S. at 484, 493.

Moreover, even if the claim were properly brought in this proceeding, Plaintiff would fail to state a claim. The United States Constitution does not require strict proportionality between a crime and its punishment. *Harmelin v. Michigan*, 501 U.S. 957, 965 (1991); *United States v. Marks*, 209 F.3d 577, 583 (6th Cir. 2000). "Consequently, only an extreme disparity between crime and sentence offends the Eighth Amendment." *Marks*, 209 F.3d at 583; *see also Lockyer v. Andrade*, 538 U.S. 63, 77 (2003) (gross disproportionality principle applies only in the extraordinary case); *Ewing v. California*, 538 U.S. 11, 36 (2003) (principle applies only in "'the rare case in which a threshold comparison of the crime committed and the sentence imposed leads to an inference of gross disproportionality'") (quoting *Rummel v. Estelle*, 445 U.S. 263, 285 (1980)). A sentence that falls within the maximum penalty authorized by statute "generally does not constitute 'cruel and unusual punishment.'" *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000) (quoting *United States v. Organek*, 65 F.3d 60, 62 (6th Cir. 1995)). Ordinarily, "[f]ederal courts will not engage in a proportionality analysis except in cases where the penalty imposed is death or life in prison without possibility of parole." *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995). Plaintiff was not

sentenced to death or life in prison without the possibility of parole, and his sentence falls within the maximum penalty under state law. Plaintiff's sentence and continued incarceration therefore do not violated the Eighth Amendment.

### D. Equal Protection Clause

Plaintiff alleges that Defendants deprived him of his rights under the Equal Protection Clause of the Fourteenth Amendment when they considered his medical condition in rescinding his parole and continuing him for 12 months before further parole consideration.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne Living Ctr., Inc.*, 473 U.S. 432, 439 (1985). When a law adversely impacts a "suspect class" such as one defined by race, alienage, or national origin, or invades a "fundamental right" such as speech or religious freedom, the rigorous "strict scrutiny" standard governs, whereby such laws "will be sustained only if they are suitably tailored to serve a compelling state interest." *City of Cleburne*, 473 U.S. at 440. Where legislation singularly and negatively affects a "quasi-suspect" class such as one defined by gender, the level of scrutiny is "intermediate" and the law is valid if it is "substantially related to a sufficiently important government interest." *Id.* at 440-41.

It is well established that disability does not constitute a suspect or quasi-suspect class under the Equal Protection Clause. *See Bd. of Trustees of Univ. of Alabama v. Garrett*, 531 U.S. 356, 366 (2001) (reiterating that disability is not entitled to heightened review under the Equal Protection Clause) (citing *Cleburne*, 473 U.S. at 446) (mental retardation is not a quasi-suspect class). Instead, classifications based on disability violate the Equal Protection Clause only if they

lack a rational relationship to a legitimate governmental purpose. *See Tennessee v. Lane*, 541 U.S. 509, 522 (2004) (citing *Garrett*, 531 U.S. at 366).

Here, the parole board's actions in rescinding Plaintiff's parole and in continuing his next parole consideration for 12 months is entirely rational. The parole board originally granted Plaintiff parole only upon the condition that he satisfactorily complete the intensive RSAT program. When he could not complete the RSAT program, the parole board altered its conditions to permit Plaintiff to complete the alternative ASAT program. Plaintiff's medical condition and hospitalization again forced him to miss significant time in the ASAT program. Plaintiff's withdrawal from that program and the rescission of his parole were based on a determination that his medical condition repeatedly interfered with his ability to participate in both the RSAT and ASAT programming:

> 2   The Michigan Parole Board has been notified that you are not able to complete programming (ASAT) at DRC due to current medical issues requiring hospitalization. This information was not known to the Board prior to the execution of the parole order.
>
> As the Michigan Parole Board granted your Parole while unaware of this information, your Parole is hereby rescinded.

(Ex. 8 to Compl., ECF No. 1, PageID.18.) The parole board's decision, therefore, was not based on an arbitrary conclusion that Plaintiff was disabled. It was instead based on Plaintiff's inability to complete a program that the parole board had determined to be necessary to safely release him on parole. The parole board's decision was rationally related to a legitimate governmental interest.

### E.   Americans With Disabilities Act

In his second claim, Plaintiff contends that Defendant MPB, in dismissing him from the RSAT program, discriminated against him on the basis of his disability, in violation of Title II

of the ADA, 42 U.S.C. §§ 12131. Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Therefore, to state a claim under the ADA, Petitioner must show that he is a "qualified person," that he has a "disability," and that parole is a "service, program, or activity" of the state. In the ADA, the term "disability" is defined as follows: "[1] a physical or mental impairment that substantially limits one or more of the major life activities of such individual; [2] a record of such an impairment; or [3] being regarded as having such an impairment." 42 U.S.C. § 12102(2). Similarly, Section 504 of the Rehabilitation Act protects any "otherwise qualified individual" from "be[ing] excluded from the participation in, be[ing] denied the benefits of, or be[ing] subjected to discrimination" under specified programs "solely by reason of her or his disability." 29 U.S.C. § 794(a).

Even assuming that Plaintiff's ulcerative colitis qualifies as a disability, he cannot demonstrate that he is a "qualified person" within the meaning of the ADA. The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2). Plaintiff does not dispute that regular attendance was a program requirement or that his ulcerative colitis has caused him to miss 20 days of the intensive treatment program by the time he was dismissed. (*See* Ex. 4 to Compl., ECF No. 1, PageID.14.) Indeed, in a letter Plaintiff sent to the MPB, Plaintiff frankly acknowledged that he was removed from the program "[d]ue to my inability to fulfill my obligations in the program . . . ." (Ex. 9 to Compl., ECF No. 1, PageID.19.)

Moreover, Plaintiff was offered an accommodation for his disability, in the form of a bathroom detail, which permitted him to leave to use the restroom whenever he needed to. Plaintiff does not suggest any accommodation that would have permitted him to meet the attendance requirements. Under these circumstances, Plaintiff cannot demonstrate that he was a qualified person. His ADA claim against Defendant MPB therefore will be dismissed.

F.   Universal Declaration of Human Rights

Plaintiff contends that Defendant MPB violated Article 7 of the Universal Declaration of Human Rights, when it removed him from the RSAT program. Federal courts do not recognize a cause of action for state prisoners based on the United Nations' Universal Declaration of Human Rights. *Sosa v. Alvarez–Machain*, 542 U.S. 692, 734-35 (2004); *Serra v. Lappin*, 600 F.3d 1191, 1196–97 & n. 5 (9th Cir. 2010). Plaintiff therefore fails to state a claim on this basis.

G.   State-Law Claims

In his first, third and fourth claims for relief, Plaintiff alleges that Defendants violated MICH. COMP. LAWS §§ 791.233(1)(A), 791.235(6), and 791.233e(6). Claims under § 1983 can only be brought for "deprivation of rights secured by the constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Plaintiff's assertions that Defendants violated state law therefore fail to state a claim under § 1983.

Moreover, to the extent that Plaintiff seeks to invoke this Court's supplemental jurisdiction over his state-law claims, the Court declines to exercise jurisdiction. In determining whether to retain supplemental jurisdiction, "[a] district court should consider the interests of

judicial economy and the avoidance of multiplicity of litigation and balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir. 1993). Ordinarily, where a district court has exercised jurisdiction over a state-law claim solely by virtue of supplemental jurisdiction and the federal claims are dismissed prior to trial, the court will dismiss the remaining state-law claims. *Id*. Dismissal, however, remains "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. § 1367(c)); *Orton v. Johnny's Lunch Franchise, LLC*, 668 F.3d 843, 850 (6th Cir. 2012). Here, the balance of the relevant considerations weighs against the continued exercise of supplemental jurisdiction. Accordingly, Plaintiff's three state-law claims will be dismissed without prejudice.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal. Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: April 5, 2017         /s/ Janet T. Neff
                             Janet T. Neff
                             United States District Judge